IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ABSOLUTE ESSENCE, LLC**                                                                                    **PLAINTIFF**

V.                                           4:22CV294 JM

**PUBLIC CONSULTING GROUP LLC,**
**PUBLIC CONSULTING GROUP INC,**
**PUBLIC CONSULTING HOLDINGS GROUP INC,**
**VERACIOUS INVESTIGATIVE AND**
**COMPLIANCE INT'L LLC, d/b/a**
**VERACIOUS SOLUTIONS, LLC d/b/a**
**VERACIOUS COMPLIANCE SOLUTIONS LLC,**
**CHAD W. WESTOM, SAMAARA YAEL ROBBINS,**
**DOES, JANE AND JOHN 1-10**                                                                      **DEFENDANTS**

## ORDER

Plaintiff Absolute Essence LLC submitted an application for a marijuana dispensary facility license to the Arkansas Medical Marijuana Commission ("MMC") prior to the application deadline of September 18, 2017. Plaintiff paid the MMC a $7,500 filing fee and expended another $1,000,000 for zoning of a facility and professional fees involved in the application.

After all applications were submitted, the MMC decided to outsource scoring of dispensary licenses to private contractors through a bidding process. The MMC received two bids from private contractors: one from ICF Incorporated and one from Defendant Public Consulting Group Inc. At the time, Public Consulting Group Inc. was a Massachusetts corporation but has since surrendered its charter to become the Delaware limited liability company, Defendant Public Consulting Group LLC.[1]

---

[1] The Court will refer to Public Consulting Group Inc. and PCG LLC collectively as PCG.

PCG bid $99,472 to score the applications for Arkansas dispensary licenses and ICF bid $361,500. In addition, ICF stated that they would likely require longer than 30 calendar days to score the applications after they were submitted. On September 27, 2018, the Arkansas Department of Finance and Administration awarded the application scoring contract to PCG.

On October 30, 2018, the MMC transferred 197 dispensary applications to PCG to be scored and ranked. PCG completed the project in just 2 weeks. At an MMC meeting on January 9, 2019, the MMC voted to accept the scores and began issuing licenses. Plaintiff did not receive a license. After an FOIA request, the MMC released to the public PCG's scoring of the applications. Plaintiff learned that its application received a "mediocre score." On April 27, 2021, the MMC issued Plaintiff a letter denying Plaintiff's application for a dispensary license and refunded half of Plaintiff's application fee.

In the Amended Complaint (hereinafter the "Complaint"), Plaintiff contends that PCG failed to abide by the MMC Rules and Arkansas' Amendment 98 which authorized medical marijuana sales. Under the contract and the Statement of Work ("SOW") included in the contract between the DFA and PCG, PCG was required to have a five-member scoring team. (Complaint, ECF No. 3 at ¶ 32). The members of the scoring team were required to use a state-mandated scoring sheet, to certify that they had no conflicts of interest, and to execute a confidentiality agreement. The scoring team included Defendant Chad Westom, Joy Bryant, Julia Kleiman, Robert Dunas, and Jon Riley. *Id.* at ¶ 36. According to Plaintiff, however, PCG used one other person as a member of the scoring team, Defendant Samaara Robbins ("Robbins"), and one other firm, Veracious, for which Westom is a managing partner. Plaintiff claims that Defendant Chad W. Westom ("Westom") and Defendant Veracious Investigative and Compliance Int'l LLC, d/b/a Veracious Solutions, LLC d/b/a Veracious Compliance Solutions LLC ("Veracious")

"desired to insinuate themselves to gain control of the scoring process in Arkansas and chose PCG to front their bid" to the MMC for the project. *Id*. at ¶ 21.

Plaintiff contends that Robbins is a marijuana license application writer for Canna Advisors, a firm which wrote applications for clients who were applying for Arkansas marijuana licenses. Plaintiff contends that Robbins had a conflict of interest. Plaintiff alleges that Veracious also has a conflict of interest because it holds itself out and solicits work as an expert cannabis dispensary application writer and a regulatory compliance expert. Plaintiff claims that the Defendants steered licenses to major marijuana industry players by intentionally scoring other applicants lower.

In Count One, Plaintiff alleges that Defendants tortiously interfered with its business expectancy that its application would be fairly and thoroughly scored and ranked by Defendants. In Count Two, Plaintiff allege that at the time Defendants commenced their scoring venture they fraudulently represented that they would score the applications honestly, with no conflicts of interest, and adhere to the contract. Plaintiff relied on these representations and suffered damage as a result. In Count III, Plaintiff alleges that Defendants violated the Arkansas Civil Rights Act through the scheme to favor license applications of major marijuana industry players which had the intended discriminatory effect of shifting licenses away from racial minorities including Plaintiff. In Count IV, Plaintiff contends that Defendants engaged in a conspiracy to award dispensary facility licenses to those applicants whom Defendants favored and to deny a license to Plaintiff.

Defendants have each filed a motion to dismiss Plaintiff's claims against them. Defendant Public Consulting Group Holdings Inc. ("PCGH") contends that Plaintiff has not stated a claim against it and the Complaint should be dismissed pursuant to Rule 12(b)(6).

PCGH, PCG, Westom and Veracious contend that the Complaint should be dismissed because Plaintiff has failed to state a claim pursuant to Rule 12(b)(6) and Rule 9(b). Defendant Robbins contends that the Plaintiff's Complaint should be dismissed as to her because Plaintiff has failed to state a claim and because the Court lacks personal jurisdiction over her. Plaintiff has responded to the motions. They are ripe for consideration.

I.     STANDARD FOR RULE 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.622, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The issue at the motion to dismiss stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

II.     ANALYSIS

    A. <u>PCGH</u>

PCGH claims that Plaintiff has not made an allegation that PCGH engaged in any act of wrongdoing. The only allegation against PCGH in the Complaint is that PCGH is a holding

company that owns PCG. PCGH contends that is not liable for the alleged debts of PCG just because PCG is a subsidiary. Under Arkansas law, "it is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2006).

Plaintiff has not responded to PCGH's argument. There is no allegation in the Complaint that PCGH engaged in unlawful activity. After review of the Complaint, PCGH's argument, and the law cited, the Court finds that PCGH's motion to dismiss the Complaint against it for failure to state a claim should be granted.

B. Remaining Defendants

1. Tortious Interference with a Business Expectancy

To establish a claim of tortious interference with business expectancy, Plaintiff must prove: (1) it had a business expectancy with a third party; (2) Defendants knew of the expectancy; (3) Defendants intentionally interfered and caused a breach or termination of the expectancy; and (4) it resulted in damages. *Apprentice Info. Sys., Inc. v. DataScout, LLC*, 544 S.W.3d 39, 43 (Ark. 2018) (citing *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 215 S.W.3d 596 (Ark. 2005)). The Arkansas Supreme Court has held that "any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy." *Stewart Title Guaranty Co, v. American Abstract & Title Co.*, 215 S.W.3d 596, 603 (Ark. 2005).

Defendants argue that Plaintiff fails to allege facts sufficient to satisfy the first element of this claim. Defendants argue that Plaintiff's subjective expectation as to how its license application might proceed is not a prospective business relationship that has pecuniary value. Defendants point out that Plaintiff's alleged expectancy is with PCG, not a third party. Further,

they argue that the grant of a license is not merely determined by PCG but is contingent on acceptance by the MMC.

In the Complaint, Plaintiff alleges that it "created a valid business expectancy" by expending funds to be in a position to file an application for a dispensary facility license, to prepare . . .the application itself, to pay the application fees, and by filing its application with the MMC." (ECF No. 3 at ¶ 71). Plaintiff's expectancy was that "its application would be fairly and thoroughly scored and ranked by Defendants." *Id.*

Arkansas courts have not found a business expectancy where a plaintiff has merely filed an application for governmental licensing. Plaintiff cites the Court to cases in other jurisdictions where the court has found a valid expectancy by virtue of application for a license. *See Greensun Group LLC v. City of Bellevue*, 436 P.3d 397 (Wash. App. 2019); *Alsherbini v. Village of Worth*, 2011 WL 1303427 (N.D. Ill. 2011). The cases cited by Plaintiff are readily distinguishable. The plaintiffs in *Greensun* and *Alsherbini* had obtained business licenses. They were not merely applicants for a business license. In *Greensun*, the court stated, "[T]he [Liquor Control Board] issued Greensun a marijuana retailer license. The company made arrangements to acquire inventory and had staff available to begin operations. Greensun's plan to open a marijuana retail shop was not merely wishful thinking. It demonstrated a material issue as to its valid business expectancy." *Greensun,* 436 P.3d at 406. In *Alsherbini*, the plaintiff operated his café with a valid business license for four years before he alleged the defendants began interfering with his expectation of conducting business with his patrons. Here, Plaintiffs are only applicants for a license with no established business.

Although not binding authority, the Court has reviewed cases from other jurisdictions where the courts explicitly found that a governmental licensing process did not create a business

expectancy as a matter of law. *See State ex rel. CannAscend Ohio LLC v. Williams,* 2020 WL 554226, *17 (Ohio App. 2020) (citing cases from other jurisdictions that have "uniformly held that the prospect of receiving a license is not a business or contractual relationship which can sustain an action for tortious interference."); *Bakri v. Daytona Beach*, No. 6:08-CV-1572-ORL-28GJK (M.D. Fla. June 5, 2009) ("Plaintiff avers that Defendants interfered with his 'licensing relationship' with the State of Florida. * * * However this is not a 'business relationship' that has been recognized as supporting the interference tort."); *Asia Invest. Co. v. Borowski*, 133 Cal. App. 3d 832, 840-41 (1982) ("[Plaintiff] is unable to assert any business relationship with which there has been tortious interference. * * * The relationship between [plaintiff] and the City cannot be characterized as an economic relationship"); *Itasca v. Lisle*, 817 N.E.2d 160, 352 Ill. App. 3d 847, 858 (2004) (allegations of interference with a "government relationship" cannot survive a motion to dismiss because there is no "valid business expectancy"); *Wagner v. Nottingham Assocs.*, 464 So. 2d 166, 169, fn. 4, 5 (Fla. App. 1985) (stating that it could not find a single case sustaining a tortious interference action where a governmental relationship was alleged to be the advantageous relationship); *Blank v. Kirwan*, 703 P.2d 58, 39 Cal. 3d 311, 316-17 (1985) (plaintiff's pleading failed to satisfy the economic relationship element of a claim for tortious interference). While Arkansas courts have not had occasion to rule on this specific issue, the Court believes that Arkansas courts would find that an application for a license does not create a valid expectancy. *See e.g., Blum v. Ford, Comm'r of* Revenues, 107 S.W.2d 340 (1937) (liquor license is merely a privilege).

The Court also agrees that Plaintiff has not alleged a business expectancy with a third party in its Complaint. *Datascout*, 544 S.W.3d at 43 (alleged business expectancy must be with a third party). In the Response to the Motion to Dismiss, Plaintiff attempts to add allegations which are

7

not stated in the Complaint to support the inference that Plaintiff had a valid expectancy in receiving a license and an expectancy to do business with retail patrons. However, Plaintiff does not make this claim in the Complaint.[2] *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.")

Moreover, Defendants' argument that the license is contingent on approval by the MMC, is well taken. Plaintiff states in the Complaint that the MMC emphasized that PCG's "scores were unofficial until acted on by the MMC." (ECF No. 3 at ¶ 26). Under Arkansas law, "[t]here can be no claim for tortious interference where a business expectancy is subject to a contingency." *Mercy Health System of Northwest Arkansas, Inc. v. Bicak*, 383 S.W.3d 869, 876 (Ark. 2011).

Because the Court finds that Plaintiff, as an applicant for a license, does not have a business expectancy, Plaintiff's claim for tortious interference is dismissed as to all parties.

    2. Fraud

The Defendants argue that Plaintiff's fraud claim should be dismissed for four reasons: 1) Plaintiff failed to plead facts establishing Defendants made a false representation of fact; 2) Plaintiff fails to plead facts establishing Defendants intended to induce action in reliance upon their representations; 3) Plaintiff fails to plead fact establishing its justifiable reliance; and 4) Plaintiff fails to allege facts establishing damage suffered as a result of the reliance.

The most compelling argument is that Plaintiff cannot prove that it relied on any statement made by the Defendants because Plaintiff's application was submitted before the Defendants were hired by the MMC to score the applications. Plaintiff submitted its application

---

[2] Plaintiff states in its Response that it "requests and should be given leave to amend to replead any count the Court might find technically insufficient." (ECF No. 34 at p. 22-23). However, amendment of this claim would be futile because the claim is dismissed for other reasons.

to the MMC on or before September 18, 2017. (ECF No. 3 at ¶17). The MMC hired the Defendants on September 27, 2018. *Id.* at ¶ 24. Plaintiff cannot prove that it paid a filing fee or expended money on professional fees and zoning of a proposed facility in reliance on any statement made by the Defendants one year later. Plaintiff fails to state a claim for fraud and the claim must be dismissed as to all Defendants.

      3.  <u>Race Discrimination</u>

Plaintiff alleges that the Defendants' biased scoring of the marijuana dispensary applications had the "foreseeable, intended and racially discriminatory effect of shifting licenses away from racial minorities, including African Americans, and towards companies owned and/or controlled by white people." *Id.* at ¶ 90. Plaintiff alleges that the Defendants knew it was a 100% minority owned business and re-scored Plaintiff's application to penalize it for "arbitrary reasons not justified or warranted by the MMC Rules or official scoring criteria." *Id*. at ¶ 92. Plaintiff claims that similarly situated white-owned applicants were not penalized. Plaintiff claims that Defendants' actions violated the Arkansas Civil Rights Act, specifically Ark. Code Ann. § 16-123-107(a)(2)-(5) and (b), and in the alternative, Sections 2, 3, 18, and 29 of Article II of the Arkansas Constitution, the Federal Civil Rights Act and 42 U.S.C. § 1983.

Defendants argue that Plaintiff has failed to allege facts establishing that the Defendants interfered with an activity which is protected under the ACRA or § 1981.[3] Defendants contend Plaintiff does not have a property or contract interest in a marijuana dispensary license, and therefore, neither § 1981 nor the ACRA protect Plaintiff's application for the license.

The Court agrees. The purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the "performance, modification and termination of contracts" and to protect "the enjoyment of all

---

[3] "We analyze ... § 1981 claims ... and ACRA claims in the same manner." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)

9

benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Under Arkansas law, an application for a license is "not a contract between the state and the licensee, and no property rights inhere in it." *Blum v. Ford*, 107 S.W.2d 240, 344 (Ark. 1937). "State law creates a property interest in a license only if the state lacks discretion and must issue a license to an applicant who complies with the statutory requirements." *Harris v. Gadd*, 2008 WL 176384, *4 (E.D. Ark. 2008). Here, the MMC retained discretion to grant a marijuana dispensary license even if the applicant complied with all of the requirements for obtaining one. Accordingly, Plaintiff does not have a property interest in a license and neither the ACRA nor § 1981 protect Plaintiff's right to obtain one.

To the extent Plaintiff includes a claim under the Equal Protection Clause, it is also dismissed. "The Equal Protection Clause plainly prohibits *state actors* from intentionally discriminating based on race or national origin." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Plaintiff makes the conclusory allegation that the Defendants were acting under color of state law. Conclusory allegations are insufficient to state a claim under Rule 12(b)(6). Accordingly, Plaintiff has failed to state a claim against the Defendants for race discrimination under the Equal Protection Clause.

   4. <u>Civil Conspiracy</u>

Because Plaintiff has failed to state a claim under counts one, two, or three, the civil conspiracy claim also fails. *See KBX, Inc. v. Zero Grade Farms,* 2022 Ark. 42, 19, 639 S.W.3d 352, 364 (2022) (no conspiracy claim in the absence of an agreement to commit an underlying intentional tort).

III. CONCLUSION

For these reasons, Plaintiff's claims against all of the Defendants are dismissed. The motion to dismiss of PCGH (ECF No. 11), PCG (ECF No. 13), and Veracious and Westom (ECF No. 19) are GRANTED. The Motion to Dismiss of Samaara Robbins (ECF No. 32) is MOOT. The Clerk is directed to close the case.

IT IS SO ORDERED this 22nd day of March, 2023.

James M. Moody Jr.
United States District Judge